**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| ALHADI ARMSTRONG, | : | |
| | : | Civil Action No. 13-2029 (SDW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**WIGENTON**, District Judge:

Presently before the Court is the motion of Alhadi Armstrong ("Petitioner") to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255.  (ECF No. 1)  Respondent, United States of America ("Respondent" or "Government"), filed a response (ECF No. 11), to which Petitioner replied (ECF No. 14).  For the following reasons, the Court denies the motion and no certificate of appealability shall issue.

## I.  BACKGROUND

On July 20, 2010, officers of the Newark Police Department covertly surveilled the region surrounding the intersection of Spruce Street and MLK Boulevard in Newark, New Jersey, as part of a concentrated effort to decrease gang violence and open air narcotic sales in the area.  (*See* Incident Report, attached ECF No. 11 at PageID 120).  While surveilling the region, police "noticed several individuals huddled at the driveway of 91 Spruce St.[, and] during this huddle [the officers'] attention was drawn to a black male wearing a white [T-shirt] with blue jeans sitting in a lawn chair engaging in brief conversation with [passersby.]"  (*Id.*).  The Newark Police later

identified this individual as Petitioner, Alhadi Armstrong. (*Id.*). While the officers were watching, Petitioner stood up and "pulled what appeared to be [a] handgun from his [right] pants pocket." (*Id.*). Petitioner then carried this gun to a garbage can in a nearby alleyway, removed a blue plastic bag, and wrapped the gun in the plastic bag. (*Id.*). After wrapping the weapon, Petitioner "walked out of the alleyway and walked directly across the street to 90 Spruce St. [which was] later found to be a laundry room." (*Id.*). Officers continued to watch as Petitioner entered the laundry room for approximately three minutes, and then returned to the street without the blue bag. (*Id.*).

After witnessing Petitioner's exit, one of the detectives on scene, apparently fearing that another individual may come into contact with the weapon Petitioner had placed in the bag, instructed the officers on scene to move in and detain Petitioner and several other individuals near the laundry room. (*Id.*). The police identified themselves as such and safely detained Petitioner and the other men in front of 91 Spruce Street near where Petitioner had originally been observed. (*Id.*). One of the officers thereafter entered the laundry room and "immediately noticed the blue bag sitting on the floor behind the last washing machine." (*Id.*). The officer then approached the bag and "immediately noticed the partially opened blue bag [contained] a silver semi auto[matic] handgun with [a] black textured grip." (*Id.*). The officers later determined that the weapon was a defaced .45 caliber Tanfoglio handgun which contained seven rounds of ammunition. (*Id.*). Petitioner was thereafter arrested. (*Id.*).

Although Petitioner was originally arrested by the Newark Police and held in state custody, he was transferred into the custody of the ATF and federally prosecuted as part of the ATF's Project Triggerlock Investigation. (*See* ATF Report, Document 6 attached to ECF No. 11 at

PageID 130-31).   On January 24, 2011, Petitioner was charged by way of a one-count indictment

with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).   (Indictment,

Document 3 attached to ECF No. 11).   On October 6, 2011, Petitioner entered into a plea

agreement with the Government, agreeing to plead guilty to the one count indictment in exchange

for certain sentencing considerations.   (Plea Agreement, Document 7 attached to ECF No. 11).

This Court held a plea hearing in Petitioner's criminal matter on October 26, 2011.   At the

plea hearing, Petitioner first confirmed that he was, at that time, twenty-four years old and had

completed the eleventh grade.   (Document 1 attached to ECF No. 11 at 3).   Although Petitioner

stated that his reading ability was limited, he confirmed that he did understand the English

language and the nature of proceedings.   (*Id.*).   This Court then addressed with Petitioner his

understanding of his entry of a plea of guilty.   Petitioner confirmed that he had discussed his entry

of a guilty plea with counsel, and that counsel had answered all of his questions to his satisfaction.

(*Id.*).   Petitioner also stated that he had no questions for the court.   (*Id.*).   Petitioner then stated

that he had had a complete opportunity to discuss his plea with counsel.   (*Id.* at 4).   This Court

then informed Petitioner that once he pled guilty, he would not be permitted to retract that plea

because of his disagreement with his sentence, and that he would be giving up his right to trial by

pleading, both of which Petitioner said he understood.   (*Id.*).   Petitioner also stated that he had

had any questions he may have had about waiving his trial rights answered to his satisfaction by

counsel.   (*Id.* at 5).   Petitioner next confirmed that counsel had explained the Sentencing

Guidelines and this Court's discretion to his satisfaction and that he understood this Court's

discretion at sentencing.   (*Id.*).   Petitioner then stated that counsel had explained the plea

agreement, had answered any questions Petitioner had about that agreement, that Petitioner had

3

signed the agreement, and that Petitioner understood the appellate waiver contained within the

agreement.   (*Id.* at 5-7).   Petitioner also confirmed that he had read and signed an application to

enter a plea of guilty, and that counsel had explained that document to his satisfaction.   (*Id.* at 8-

9).

> This Court then addressed the factual basis for Petitioner's plea:

> THE COURT:  Okay.  Alright.  In particular, on or about July 20th, 2010, were you sitting in a lawn chair on a public sidewalk in Newark, New Jersey, holding a .45 caliber Tanfoglio semi-automatic handgun with an obliterated serial number loaded with seven live rounds of ammunition?

> [Petitioner:]   Yes, your Honor.

> THE COURT:   As law enforcement officers approached you, did you get up and attempt to conceal the firearm in a laundry room?

> [Petitioner:]   Yes, your Honor.

> THE COURT:   Did officers discover the firearm and place you under arrest?

> [Petitioner:]   Yes, your Honor.

> THE COURT:   And did you possess this firearm knowingly?

> [Petitioner:]   Yes, your Honor.

> THE COURT:   Prior to that, on or about June 18th, 2007, were you sentenced to three years' imprisonment in the Superior Court of New Jersey following a conviction for aggravated assault in violation of the New Jersey Statutes Annotated Section 2C:12-1B(1)?

> [Petitioner:]   Yes, your Honor.

> THE COURT:   And is that punishable by a term exceeding one year imprisonment?

> [Petitioner:]   Yes, your Honor.

(*Id.* at 9-10).   Based on this factual recitation, as well as the Government's assertion that it would

be able to prove that the weapon was manufactured outside of the State of New Jersey and is a

firearm under federal law, this Court accepted Petitioner's guilty plea.   (*Id.* at 10-11).

This Court sentenced Petitioner on March 9, 2012.   (Document 2 attached to ECF No. 11

at 1).   Following argument and consideration of the appropriate sentencing factors, this Court

agreed with the guidelines range stipulated to in the plea agreement finding a total guidelines level

of 25 with a criminal history category of four.   (*Id.* at 13).   Based on this recommended guidelines

range, as well as the seriousness of Petitioner's offense, the need to deter him and others, and the

need to promote respect for the law, among other factors, this Court ultimately sentenced Petitioner

to 105 months' imprisonment and a three year term of supervised release.   (*Id.* at 12-14).

## II.   DISCUSSION

### A.   Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging

the validity of his sentence.   Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws of
> the United States, or that the court was without jurisdiction to
> impose such a sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

28 U.S.C. § 2255.

Unless the moving party claims a jurisdictional defect or a Constitutional violation, in order to be entitled to relief the moving party must show that an alleged error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure."   *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir.) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

## B.   Analysis

### 1.   An evidentiary hearing is not required

An evidentiary hearing is required to resolve a motion to vacate under 28 U.S.C. § 2255 "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."   28 U.S.C. §2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).   Where the record, viewed in light of the trial judge's personal knowledge of a petitioner's criminal case, conclusively negates the factual predicates asserted by a petitioner or indicate that petitioner is not entitled to relief as a matter of law, no hearing is required.   *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546.   For the reasons set forth below, Petitioner's claim is without merit and the record conclusively establishes that Petitioner is not entitled to relief as a matter of law.   An evidentiary hearing is therefore not required to resolve Petitioner's motion.

6

## 2.   Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was constitutionally ineffective in relation to his entry of a guilty plea.   The two-prong test set forth by the Court in *Strickland v. Washington*, 466 U.S. 668 (1984), governs a petitioner's claims of ineffective assistance of counsel.   Under *Strickland*, the petitioner must first show that "counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."   *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).   Second, a petitioner must show that counsel's deficient performance resulted in sufficient prejudice to his defense that Petitioner was "deprive[d] of a fair trial . . . whose result is reliable."   *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In determining whether counsel's performance was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'"   *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).   Thus, a petitioner asserting ineffective assistance must show that his counsel's representation "fell below an objective standard of reasonableness" under the circumstances.   *Id.*   Reasonableness in this context is determined based on the facts of the petitioner's particular case, viewed as of the time of conduct alleged to have been ineffective.   *Id.* Judicial scrutiny of counsel's performance "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689.   Even if Petitioner is able to show that counsel was deficient, he must still affirmatively demonstrate that that deficiency resulted in prejudice to his defense.   *Id.* at 692-93.   "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."   *Id.* at 693.   Petitioner must show that

7

"there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.  "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

Petitioner asserts that counsel was ineffective in advising him during the plea phase of his criminal conviction, and that had counsel provided proper advice he would not have pled guilty. Where a Petitioner pled guilty, "[i]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  As the Supreme Court explained in *Hill*,

> [i]n many cases the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial.  For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. . . . As we explained in [*Strickland,*] these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the idiosyncrasies of the particular decisionmaker.

474 U.S. at 59-60 (internal quotations and citations omitted).

8

A Petitioner faces additional hurdles where he challenges the sworn statements he and his

lawyer made during his plea hearing.   As the Court has explained,

> the representations of the defendant, his lawyer, and the prosecutor
> at [a plea] hearing, as well as any findings made by the judge
> accepting the plea, constitute a formidable barrier in any subsequent
> collateral proceedings.  Solemn declarations in open court carry a
> strong presumption of verity.  The subsequent presentation of
> conclusory allegations unsupported by specifics is subject to
> summary dismissal, as are contentions that in the face of the record
> are wholly incredible. . . .
>
> . . . [T]he barrier of the plea or sentencing proceeding record,
> although imposing, is not invariably insurmountable [however].   In
> administering the writ of habeas corpus and its § 2255 counterpart,
> the federal courts cannot fairly adopt a per se rule excluding all
> possibility that a defendant's representations at the time his guilty
> plea was accepted were so much the product of such factors as
> misunderstanding, duress, or misrepresentation by others as to make
> the guilty plea a constitutionally inadequate basis for imprisonment.

*Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977); *see also United States v. Erwin*, 765 F.3d 219,

230 (3d Cir. 2014) (applying *Blackledge*); *United States v. Dickler*, 64 F.3d 818, 823 n. 7 (3d Cir.

1995) ("Sworn statements in a plea proceeding are conclusive unless the movant can demonstrate

compelling reasons for questioning their truth"); *Zillich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994)

(habeas petitioners challenging guilty pleas face a heavy burden, statements under oath carry a

strong presumption of verity); *United States v. Stewart*, 977 F.2d 81, 84 (3d Cir. 1992) ("The ritual

of the colloquy is but a means toward determining whether the plea was voluntary and knowing.

A transcript showing full compliance with the customary inquiries and admonitions furnishes

strong, although not necessarily conclusive, evidence that the accused entered his plea without

coercion and with an appreciation of its consequences").

Petitioner asserts that counsel was ineffective during the plea process because counsel

9

misadvised Petitioner that his fingerprints were found on the seized firearm, that counsel advised

him he should respond affirmatively to the Court's questions during the plea hearing if he wished

for leniency (and, in turn, took advantage of Petitioner's reading difficulties), and that counsel

failed to investigate the facts of Petitioner's case including interviewing alleged eyewitnesses.[1]

In support of his claims, Petitioner provides only his own affidavit, claiming that he was leaving a

friend's apartment when he was stopped and alleging that counsel failed to investigate and made

a misstatement that Petitioner's fingerprints were on the weapon, and an affidavit from his mother.

(Document 3 attached to ECF No. 1 at 1-6; Document 4 attached to ECF 1 at 1-3).   In her affidavit,

Petitioner's mother alleges that she was told by eyewitnesses that Petitioner was arrested without

reason.   (Document 4 attached to ECF No. 1 at 1-2).   While Petitioner's mother alleges that she

was told by two eyewitnesses what occurred on Spruce Street and that she relayed what she had

been told to counsel, she herself was not an eyewitness.   (*Id.* at 1-3).   Indeed, Petitioner has not

provided any affidavits from any of the alleged eyewitnesses that he suggests would have testified

on his behalf, nor any information beyond the hearsay statements of his mother as to what those

individuals would have testified to had they been called as witnesses.

      In response, the Government has provided a statement from Petitioner's trial counsel.   In

---

[1] As part of his argument that counsel failed to investigate the case, Petitioner suggests that the ATF report, which is a second-hand account based off of the reports of the Newark Police, differs fatally from the original reports of the Newark Police.   This Court rejects that argument entirely.   Although there are differences between the two reports, those differences are merely demonstrative of the fact that the ATF report was written from a different perspective by someone who was not on the scene at the time of the arrest, whereas the Newark Police report is written from the perspective of a single eyewitness officer, specifically, the officer who retrieved the weapon.   (*See* Document 6 attached to ECF No. 11 at PageID 120, 130).   The two reports, in all pertinent respects, are consistent with one another, Petitioner's creative interpretation of the slight differences in those reports notwithstanding.

10

his affidavit, counsel states that he was appointed to represent Petitioner as a CJA panelist. (Document 5 attached to ECF No. 11 at 3).   Counsel further avers that Petitioner's statements are entirely false.   (*Id.*).   Specifically, counsel states that he received discovery, including the reports of both the Newark Police and the ATF well before the entry of the guilty plea, that he and his former partner and co-counsel interviewed Petitioner at which time Petitioner admitted to possessing the gun prior to leaving it in the laundry room, that co-counsel at no point told Petitioner that his fingerprints were on the weapon, and that Petitioner and his family never provided counsel with the names or contact information of any alleged eyewitnesses.   (*Id.* at 4).

Here, Petitioner fails to overcome the strong presumption that his statements made at the plea hearing admitting to possessing and stashing the firearm in the laundry room were truthful. The only evidence Petitioner supplies in his attempt to overcome that presumption is his own bald assertion that the police "framed" him because he was a former gang member, and his mother's claims that eyewitnesses exist who told her a story different from that expressed in the police reports.   Petitioner's failure to provide any sworn testimony or affidavits from those alleged eyewitnesses, however, is fatal to his assertion that counsel failed to find and interview them.   *See Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001) ("In light of [the petitioner's] failure to present any sworn testimony [by the proposed witness], he has failed to establish prejudice as a result of [counsel's] alleged failure to [investigate and] interview [the witness.]"); *United States v. Dawson*, 857 F.3d 923, 928-29 (3d Cir. 1988) (affirming dismissal of § 2255 motion in light of a petitioner's failure to provide affidavits stating what testimony proposed witnesses would have provided); *Karamanos v. United States*, Civil Action No. 04-0171, 2005 WL 2777552, at *4 (D.N.J. Oct. 24, 2005) ("the Court cannot conclude that Petitioner was prejudiced by counsel's

11

failure to investigate or call these individuals as witnesses because Petitioner has failed to provide a sworn statement of facts from any of the [witnesses] detailing their proposed testimony"). Those allegations therefore offer no support to Petitioner's attempts to overcome the presumption that his statements to this Court were truthful.   In the face of the evidence in the record, including a Newark Police officer's eyewitness statement that he and his team not only saw Petitioner with the weapon, but that he also recovered the weapon from the very bag into which he saw Petitioner place it, Petitioner's assertion that he was framed, in the absence of any reliable supporting evidence, is exactly the sort of unsupported and conclusory allegation which the *Blackledge* Court held was suitable for summary disposition.   431 U.S. at 73-75.   As such, Petitioner's challenge to his own statements made during sentencing fails, and this Court presumes that the information provided during the plea hearing was truthful.

In light of the conclusion that Petitioner admitted his involvement in the crime during the plea hearing and Petitioner's failure to reliably substantiate his claim that other witnesses saw his arrest and would testify that he had been framed, Petitioner fails to show that he suffered any prejudice as a result of counsel's alleged deficiencies in advising him in relation to his guilty plea. At the time the plea offer was made and defendant pled guilty, the evidence against him was quite strong as it included both the seized weapon and police eyewitness statements placing that gun in Petitioner's possession.   Petitioner has provided no reliable evidence, and no evidence whatsoever other than his own bald assertions and hearsay statements allegedly made to his mother, in support of the supposition he was framed by the police due to his criminal past and never possessed the firearm in question.   Given Petitioner's extensive criminal history and the nature of the charged offense, had Petitioner gone to trial and lost, he likely would have received the statutory maximum

12

sentence of 120 months rather than the 105 month sentence he did receive.[2]   Viewing the matter

objectively, no reasonable person in Petitioner's position would have rejected the plea agreement

and insisted on going to trial in light of the significant evidence against Petitioner, the significant

additional sentencing exposure Petitioner would have faced following a trial, and the lack of any

credible evidence with which to dispute the charges.   Thus, there is no reasonable probability that,

had counsel advised Petitioner correctly, Petitioner would have insisted on proceeding to trial.   As

such, Petitioner has failed to demonstrate that he was in any way prejudiced by counsel's alleged

deficiencies.   *Hill*, 474 U.S. at 59-60.   Petitioner's assertions otherwise are, in light of the

evidence against him and his admissions during his plea hearing, no more than unsupported

assertions and are without merit.   As such, even if counsel was deficient as Petitioner alleges,

Petitioner has failed to establish a viable claim for ineffective assistance of counsel as he cannot

demonstrate *Strickland* prejudice.   *Id.*   This Court will therefore deny Petitioner's § 2255 motion.

---

[2] Had Petitioner proceeded to trial and been convicted, he would not have received the three
point reduction for acceptance of responsibility granted him by his plea agreement with the
Government.   Without that reduction, Petitioner's sentence would have been based on an
offense level of 28 with a criminal history category of four, resulting in a guidelines range of
110-137 months' imprisonment.   Given this Court's views as expressed at sentencing, and this
Court's decision to sentence Petitioner to the top of the guidelines range, Petitioner almost
certainly would have received a sentence of at least 110 months, if not the 120 month maximum
sentence for a violation of 18 U.S.C. § 922(g)(1), had he proceeded to trial and lost.   *See United
States v. Ransome*, 177 F. App'x 223, 225 n. 2 (3d Cir. 2006) (statutory maximum for a violation
of 18 U.S.C. § 922(g) is ten years absent an armed career criminal enhancement).

**III.   CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. §2253(c), Petitioner may not appeal from a final order in a proceeding under § 2255 unless Petitioner has "made a substantial showing of the denial of a constitutional right."   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   As Petitioner's ineffective assistance claim is without merit as Petitioner has failed to demonstrate prejudice, he has failed to make a substantial showing that he was denied a constitutional right, and no certificate of appealability shall therefore issue.

**IV. CONCLUSION**

For the reasons stated above, petitioner's motion is DENIED, and no certificate of appealability shall issue.   An appropriate order follows.

Dated: July 6, 2015                                    *s/ Susan D. Wigenton*
                                                      Hon. Susan D. Wigenton,
                                                      United States District Judge

14